Filed 6/27/13  Edwards v. CSP-Solano CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID E. EDWARDS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CSP-SOLANO et al.,<br><br>        Defendants and Respondents. | A137243<br><br>(Solano County<br>Super. Ct. No. FCS038470) |

Plaintiff David Edwards, an inmate of California State Prison, Solano (CSP-Solano), appeals in propria persona from an adverse judgment entered following an order of the superior court sustaining without leave to amend the demurrer of defendants CSP-Solano and Gary Swarthout, in his official capacity as warden of CSP-Solano, to his claims for damages arising out of an allegedly unlawful race-based prison lockdown policy. We do not reach the propriety of the practices that plaintiff challenges because we conclude that the superior court properly sustained the demurrer and denied leave to amend based on defendants' immunity from civil liability for plaintiff's claims.

**Background**

Plaintiff filed his initial complaint on September 2, 2011. In May 2012, plaintiff filed a second amended complaint (hereafter complaint). His complaint alleges that on July 11, 2010, following a physical assault by a White inmate on a prison staff member, all White inmates were placed on a 30-day modified program during which they were "confined to their cells twenty-four hours a day, as well as for meals, the only exception being the three times a week [they] were allowed to shower or if moved to medical

1

facilities in mechanical restraints." The complaint alleges further that following a second incident on February 7, 2011, in which a White inmate was attacked on the prison yard, all white inmates were again confined to quarters for a 30-day period. The complaint alleges that "defendants have already been enjoined by this court from locking down or maintaining inmates on modified programs based upon an inmate's ethnic or racial classification" but that—despite the injunction—it remains the policy of the California Department of Corrections and Rehabilitation (CDCR) that "when there is an incident involving any race, all inmates of that race are locked up."[1] Plaintiff's first cause of action alleges that following the July 2010 and February 2011 incidents, he was unlawfully "placed on lockdown/modified program status based solely on [his] racial classifications of being 'White' " in violation of California Code of Regulations, title 15, section 3004, subdivision (c).[2] Plaintiff's second cause of action alleges that he was unlawfully confined to quarters for more than 10 days in violation of California Code of Regulations, title 15, sections 3322, subdivision (a) and 3330, subdivisions (c) and (e).[3]

---

[1]     Exhibit 3 to plaintiff's complaint is a letter to plaintiff from the CDCR, which explains its policy more fully: "[T]he CDCR policy is that when there is an incident involving any race, all inmates of that race are locked up. Subsequent to violent incidents ethnic groups are appropriate in segmenting the inmate population during the process of establishing a regular program following the incident. As information is received to narrow the group of involved inmates, a more refined criteria is used. The same process is used regardless of involved ethnic group. Each violent inmate incident is evaluated on its own merit because each has its own dynamics."

[2]     Section 3004, subdivision (c) of the Code of Regulations provides: "Inmates, parolees and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap."

[3]     Section 3322, subdivision (a) of the Code of Regulations provides: "No inmate shall be kept in disciplinary detention or confined to quarters more than ten days. The chief disciplinary officer may shorten time spent in disciplinary detention or confined to quarters if the inmate appears ready to conform and the facility disciplinary process will benefit by such an action. When the disciplinary detention or confined to quarters disposition has expired and continued segregation is deemed necessary, the inmate shall be processed pursuant to section 3335."

Plaintiff's third cause of action alleges that defendants unlawfully used mechanical restraints to move him to medical and dental appointments during the lockdown periods in violation of California Code of Regulations, title 15, section 3268.2, subdivisions (b) and (c).[4] Finally, plaintiff's fourth cause of action alleges that he was unlawfully denied visitation during the lockdowns. Plaintiff alleges that defendants are liable for each of the violations "under California Government Code §§ 815.2, 820 and title 42 U.S.C. § 1983, as defendants have acted under the color of law, placing plaintiff[] on lockdown in violation of [his] Eighth Amendment rights, and Fourteenth Amendment constitutional rights to due process and equal protection." By his complaint, Plaintiff seeks "1. $250,000 in compensatory and punitive damages . . . for each instance [he was] placed on lockdown/modified program based solely on [his] racial classification; [¶] 2. $10,000 in compensatory and punitive damages for every full day [he was] confined to quarters beyond the 10-day standard . . . ; [¶] 3. $10,000 in compensatory and punitive damages for every time mechanical restraints were used on [him] during the 60 days

---

Section 3330 of the Code of Regulations provides in relevant part: "(c) Disciplinary detention may be ordered as a continuous period of confinement or as intermittent confinement on holidays, weekends or days off from assigned work and program activities. When ordered as intermittent confinement, confinement shall not exceed 10 days during a 35-day period. The chief disciplinary officer shall review the treatment of an inmate confined in disciplinary detention and consider a modification of sentence when evidence indicates the inmate is ready to conform to the rules. [¶] . . . [¶] (e) Continuous disciplinary detention of an inmate shall not exceed 10 full days without approval of the director or deputy director, institutions."

[4]      Section 3268.2 of the Code of Regulations provides in relevant part: "(c) Mechanical restraints shall not be: (1) Used as punishment. [¶] (2) Placed around a person's neck. [¶] (3) Applied in a way likely to cause undue physical discomfort or restrict blood flow or breathing, e.g., hog-tying. [¶] (4) Used to secure a person to a fixed object, except as a temporary emergency measure. However, a person who is being transported shall not be locked in any manner to any part of the transporting vehicle. [¶] . . . [¶] (d) When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used. However, additional mechanical restraint, including leg irons, additional chains, straight jackets, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide."

3

spent on modified program . . . ; [and] [¶] 4. $10,000 in compensatory and punitive damages for every visit denied plaintiff[] during the 60 days spent on modified program."

On September 21, 2012, the court sustained defendants' demurrer to plaintiff's second amended complaint without leave to amend. Plaintiff filed a timely notice of appeal.

## Discussion

The trial court sustained defendants' demurrer without leave to amend on numerous grounds including that defendants are immune from plaintiff's claims under 42 United States Code section 1983 and plaintiff failed to allege any other valid statutory basis for his claims.[5]

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

---

[5] The trial court also found that plaintiff failed to comply with the claims presentation requirement of the Government Claims Act with respect to his claim arising out of the February 7 modified program; plaintiff filed to initiate this suit within the time required by the Government Claims Act; and plaintiff failed to exhaust his administrative remedies related to his claim arising out of the February 7 modified program. We need not consider plaintiff's challenge to the procedural defects identified by the court because the judgment may be upheld based on defendants' immunity.

1. *Defendants are immune from liability for plaintiff's claims under 42 United States Code section 1983.*

It is well established that states and state officers sued in their official capacity are immune from liability under 42 United States Code section 1983.[6] (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829; *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348-349.) Defendant CSP-Solano is an entity of the state and defendant Swarthout was sued in his official capacity as warden of the state prison. Accordingly, both are immune from liability for plaintiff's claims under section 1983.[7]

Plaintiff's suggestion that he can cure this defect by amending his complaint to name the warden as a defendant in his individual capacity is unavailing. Despite being given leave to amend his complaint on two prior occasions, plaintiff failed to include allegations explaining how the warden personally participated in the imposition of the modified program. (*Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 934 ["In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983."].) We decline to presume that the warden is personally involved in every disciplinary action in the prison. (See *Hunt v. Dental Dept.* (9th Cir. 1989) 865 F.2d 198, 200 [supervisor not "vicariously liable for the fault of personnel"; Director of Department of Corrections not liable for actions of prison personnel].) To the contrary, the "program status reports" plaintiff attached as exhibits to

---

[6]     42 United States Code section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[7]     Plaintiff's suggestion that he can amend his complaint to state a cause of action under 42 United States Code section 1981 is without merit. The sovereign immunity of the state and its officers sued in their official capacity extends to claims under section 1981. (*Pittman v. Oregon, Employment Dept.* (9th Cir. 2007) 509 F.3d 1065, 1071-1072.)

his complaint bear the signature of someone other than the warden. Alternatively, were plaintiff to allege that the warden made the decision to impose the modified program, his decision would likely be immunized under Government Code section 820.2, which immunizes a public employee from liability for "an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (See *Jamgotchian v. Slender* (2009) 170 Cal.App.4th 1384, 1397 [Immunity applies to deliberate and considered policy decisions involving a conscious balancing of risks and advantages.]; see also *Morgan v. County of Yuba* (1964) 230 Cal.App.2d 938, 942–943 ["A discretionary act is one which requires 'personal deliberation, decision and judgment' while an act is said to be ministerial when it amounts 'only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his own.' "].)

2.    *The complaint does not allege a valid cause of action under any other legal theory.*

Plaintiff asserts that his complaint sufficiently alleges causes of action under Government Code sections 815.2, 820 and 12921, Penal Code section 422.6, subdivision (a), and California Code of Regulations, title 15 sections 3004, subdivision (c), 3268.2, subdivisions (b)(1)-(3) and (c)(1)-(5), 3322, subdivision (a), and 3330, subdivisions (c) and (e). We disagree.

First, section 815.2 or 820[8] of the Government Code do not create independent causes of actions; they prescribe the scope of the liability of a public entity or public

---

[8]    Government Code section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Government Code section 820 provides: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public

employee under other independently existing causes of action. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900; *Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 822.) Second, plaintiff has alleged no facts that bring his claim within the scope of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). Finally, there is no private right of action against the state for the alleged violation of Penal Code section 422.6[9] or the administrative regulations cited by plaintiff. (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1132 ["Only the Legislature, through enactment of a statute, can create a private right of action to directly enforce an administrative regulation."].)

By affirming the judgment, we do not imply that there is no remedy for the purportedly wrongful conduct plaintiff has alleged. If the prison is indeed employing a confinement policy that conflicts with prior court orders or is unlawful in some other respect, the matter may be reviewed by appropriately instituted contempt or habeas corpus proceedings. (Pen. Code, § 1487, subd. (2); *In re Duran* (1974) 38 Cal.App.3d 632, 636.) Although plaintiff may not obtain damages from the state based on these claims, plaintiff may file a civil action against a state official in his or her official capacity seeking injunctive relief. (*Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 71, fn. 10 ["[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' "].)

_____

employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person."

[9]     Although not referenced by plaintiff in his brief, Civil Code section 52.1 is the civil counterpart to Penal Code section 422.6, to which he does cite. (*In re M.S.* (1995) 10 Cal.4th 698, 715.) Insofar as there is a private right of action under Civil Code section 52.1, we simply note that plaintiff's complaint does not allege a cause of action under section 52.1 because liability under this section is limited to violations of constitutional or statutory rights accomplished by " ' "threats, intimidation, or coercion" ' " (*County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 227-228) and there are no allegations in the complaint that the alleged lockdown was accomplished in such a manner.

**Disposition**

The judgment is affirmed.

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.


_____

Jenkins, J.